# EXHIBIT A

2001 WL 575868
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Brian L. CONNOLLY, Plaintiff,
v.
BOSTON EDISON COMPANY, Defendant.

No. CIV.A.00–11849–PBS.   |   May 15, 2001.

**Attorneys and Law Firms**

Keith B. Muntyan, Morgan, Brown & Joy, Boston, for dft represented by Muntyan.

Allison K. Romantz, Morgan, Brown & Joy, Boston, for dft represented by Romantz.

J. Daniel Silverman, Wakefield, for pla represented by Silverman.

**Opinion**

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

DEIN, M.J.

**\*1** The plaintiff Brian L. Connolly ("Connolly") brought this action on August 23, 2000 against his former employer, Boston Edison, challenging Boston Edison's decision to terminate his employment on February 8, 1999. Boston Edison has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that Connolly's claims are all preempted by Section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), and that they are time barred by the statute of limitations contained in that Act. For the reasons detailed herein, this court recommends that Boston Edison's motion to dismiss be ALLOWED.

### I. STATEMENT OF FACTS[1]

Connolly began his employment with Boston Edison on April 30, 1990 as a splicer's helper. (Complaint ¶ 4). He was promoted in 1992 to a cable and conduit installer. (*Id.*) Throughout his employment with Boston Edison, Connolly was a member of Utility Workers of America, Local No. 369 (the "Union"), which had a collective bargaining agreement ("CBA") with Boston Edison. (*See* note 1, *supra* ).

On September 22, 1998, Connolly failed a random drug and alcohol test and was suspended for five days. (Complaint ¶ 5). At oral argument, Connolly alleged that he was subjected to this and subsequent drug tests because of the animosity of his supervisor. In addition, Connolly contends that it was unlawful for Boston Edison to require him to take the drug test since his job was not a risk to the public, he did not hold a commercial driver's license ("CDL"),[2] and his job did not require that he submit to a random alcohol or drug test. (Complaint ¶ 6). It is undisputed that there was no express reference in the CBA authorizing drug testing for employees such as Connolly prior to January 1, 1999. Rather, Boston Edison relied on the "Management Rights" provision found in Article V of the CBA (among other general provisions) to support the drug testing. (*See* Def. Mem. at 7).

As a condition for his return to work, Connolly was required to follow a mandatory program of rehabilitation as prescribed by Boston Edison's Health Services Unit. (Complaint ¶ 5). Connolly completed the program and was found to be fit for duty on November 3, 1998. (*Id.*)

On January 11, 1999 Connolly was suspended for ten days due to excessive absenteeism. (Complaint ¶ 7). As a condition of further employment, he was required to sign a "Last Chance Agreement." (*Id.*)[3] Connolly complains that he signed the agreement without the benefit of counsel and without proper advice from his Union. (*Id.*)

The Agreement, which was signed by Connolly, his Union, and Boston Edison, provided that at the conclusion of his 10 day suspension, Connolly was to report to the Medical Department on January 25, 1999 for an examination to determine whether he was "fit for duty" before returning to work. (*See* Def. Ex. B). If Connolly was found not to be fit, he was to be discharged. (*See id* .) Moreover, if Connolly committed an action for which he was suspended within three years of the date of the Agreement, he was to be discharged. The Agreement also provided that if Connolly was discharged in accordance with the provisions of the Last Chance Agreement, "such discharge shall not be subject to the grievance procedure or arbitration." (*Id.*)

**\*2** On January 25, 1999, the day of his medical examination, Connolly was requested to take a drug test. (Complaint ¶ 8). Connolly alleges that the testing was not random and that he was not under the influence of alcohol, cocaine, or any other controlled substance at the time of the request. (*Id.*) On February 1, 1999, Connolly

was advised that he had failed the drug and alcohol test, and he was terminated from his employment at Boston Edison on February 8, 1999. (Complaint ¶ 9).

Connolly further complains that he was never provided documentation concerning the January 25, 1999 medical examination and that the Boston Edison testing service never asked if he was taking medications or had dietary problems which might have affected test results. (Complaint ¶¶ 9, 10). Connolly also alleges that his claim for unemployment benefits was successful because at a hearing before the Division of Employment and Training ("DET") no test results were offered by Boston Edison, there was no proof of the chain of custody of the urine sample presented, and there was no proof indicating alcohol or cocaine use by Connolly. (Complaint ¶ 11).[4]

Boston Edison removed the case to federal court pursuant to 28 U.S.C. § 1441, asserting that this court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, because the plaintiff's state law claims were completely preempted by § 301 of the LMRA. The complaint stands in three counts. Count I is for wrongful discharge under Massachusetts law,[5] Count II alleges breach of contract, and Count III is for invasion of privacy.[6]

## II. DISCUSSION

### A. *Preemption Under Section 301 of the LMRA*

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

As the First Circuit explained in *Lydon v. Boston Sand & Gravel Co.,* 175 F.3d 6 (1st Cir.1999):

> From these simple words, a complex preemption jurisprudence has grown in stages. Initially state courts were simply prevented from applying local rather than federal law in deciding contract disputes about CBAs ..., but then the doctrine was extended to preempt state law remedies whenever resolution of a plaintiff's claim is substantially dependent on analysis of a CBA's terms .... Such preemption is necessary according to the Supreme Court to retain consistency in the interpretation of terms common to CBAs and to prevent parties from relabeling as state law claims their actions that in actuality arise under a CBA ....

*Id.* at 10, citations omitted. Thus, Section 301 preempts a state-law claim "if resolution of [that] claim depends on the meaning of a collective bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–406, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). This means that "if a court, passing upon the claim, would be required to interpret the collective bargaining agreement," it is preempted. *Flibotte v. Pa. Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir.1997), *cert. denied,* 523 U.S. 1123 (1998).

**\*3** The "bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994). For example, purely factual questions about an employee's or employer's conduct and motives would not be preempted since no interpretation of a collective bargaining agreement would be necessary. *See Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 261, 114 S.Ct. 2239, 2248, 129 L.Ed.2d 203 (1994). Moreover, Section 301 does not preempt "nonnegotiable rights conferred on individual employees as a matter of state law." *Lividas,* 512 U.S. at 123, 114 S.Ct. at 2078. It is only where a claim "alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement" or where resolution of the claim "arguably hinges upon an interpretation of the collective bargaining agreement" that preemption occurs. *Flibotte,* 131 F.3d at 26, and cases cited.

Applying this standard to the plaintiff's claims compels the conclusion that the claims are preempted.

B. *The Allegations Of The Complaint*

In opposing the motion to dismiss, plaintiff characterizes his claims as being for "breach of contract, wrongful termination and invasion of privacy" without any reference to specific statutory citations. *See* Plaintiff's Opposition To The Defendant's Motion To Dismiss ("Pl.Opp.") at 3 and 4; notes 5 and 6, *supra.* He further argues, both in his papers and during oral argument, that the critical issue is "whether or not his rights were violated prior to Edison's mandatory drug program" when he was given (and failed) the first drug test in 1998. (*See* Pl. Opp. at 5). This unlawful drug test, according to Connolly, had the "domino effect" of leading to the suspension for absenteeism in 1999 and Last Chance Agreement (apparently as opposed to a lesser penalty) and the final drug test which allegedly resulted in Connolly's termination. Unfortunately for the plaintiff, no matter how his claims are characterized, their resolution is dependent upon the meaning of the CBA. Therefore, they are preempted by § 301 of the LMRA.

1. *Breach of Contract*

Connolly alleges that Boston Edison breached its contract with him because the drug test "was not done pursuant to Boston Edison's random testing program" and because "Edison failed to disclose the test results, establish any chain of custody, or establish that Connolly had actually used cocaine at any time on or before his return to work ...." (Complaint ¶ 17). Since determining whether Boston Edison breached the CBA in conducting the drug test by necessity involves an interpretation of the CBA, preemption is clear. *See Magerer v. John Sexton & Co.,* 912 F.2d 525, 529 (1st Cir.1990) (claim that termination constituted breach of contract preempted since plaintiff failed to allege a contract independent from the collective bargaining agreement); *see also Allis–Chambers Corp. v. Lueck,* 471 U.S. 202, 210–12, 105 S.Ct. 1904, 1911–12, 85 L.Ed.2d 206 (1985) (the preemptive effect of Section 301 applies to breach of contract claims). In fact, plaintiff's own argument compels this conclusion. Connolly contends that his breach of contract claim is independent of the CBA because, as he reads the agreement, no drug testing policy was in effect when he was first tested, and the "subsequent policy was flawed ...." (Pl. Opp. at 4). Boston Edison, for its part, contends that it was authorized to test in 1998 under, among other provisions, the Management Rights provision of the CBA, and that in 1999 the testing was authorized by the express terms of the CBA. It is obvious, then, that the CBA must be interpreted to resolve the breach of contract dispute, and the claim is therefore preempted.

**\*4** Connolly's claim is distinguishable from *Luecke v. Schnucks Markets, Inc.,* 85 F.3d 356 (8th Cir.), *cert. denied,* 519 U.S. 1011 (1996), on which he relies. In *Luecke,* an employee brought a defamation claim against his employer for disseminating allegedly false information that he had refused to submit to a drug test. *Id* . at 359. No preemption under § 301 existed because there was no challenge to the employer's right to require the drug test or to discipline an employee for failing to take or pass the drug test. *Id.* at 360. Thus, the provisions of the CBA did not have to be examined or interpreted. *Id.* at 360–61. *Accord Meyers v. Schnucks Markets, Inc.,* 163 F.3d 1048, 1050–51 (8th Cir.1998) (no contract interpretation needed to resolve claims of slander and tortious interference with contractual relations). Connolly, on the other hand, has expressly challenged Boston Edison's right to have required the drug test and the manner in which the test was conducted. Connolly's case requires the court to examine and interpret the CBA.

The only other issue raised by the breach of contract claim is whether the Last Chance Agreement stands on a different footing than the CBA. It does not—the Agreement is either a supplement to the CBA or is, in itself, a CBA, and, therefore, preemption still applies.

As an initial matter, Connolly has not articulated a specific claim for breach of the Last Chance Agreement. Rather, his claim is premised on the conclusion that he should never have been put in the position of signing the Agreement, which was executed by Boston Edison, Connolly and the Union. In any event, courts which have addressed the issue have found disciplinary agreements to be part and parcel of collective bargaining agreements. *See, e.g., Int'l Union of Operating Eng'rs Local 351 v. Cooper Natural Res., Inc.,* 163 F.3d 916, 919–20 (5th Cir.), *cert. denied,* 528 U.S. 812 (1999), and cases cited (last chance agreement "formed a binding contract pursuant to the CBA" and must be treated as a supplement to the CBA); *Bakers Union Factory No. 326 v. ITT Cont'l Baking Co.,* 749 F.2d 350, 354–55 (6th Cir.1984), and cases cited (agreements reached as part of disciplinary process constitute formal contractual settlements of labor disputes and should be construed as part of the CBA); *Cotter v. DaimlerChrysler Corp.,* 87 F.Supp.2d 746, 757 (E.D.Mich.2000), and cases cited (a "Conditional Release Agreement must be treated in the same manner as the collective bargaining agreement since it is a negotiated agreement that supplements the CBA"). Consequently, § 301 of the LMRA preempts claims of breach of disciplinary agreements since they are part of the CBA and involve claims which are "founded directly on rights

created by collective bargaining agreements." *Cotter,* 87 F.Supp.2d at 752, citations omitted.

The case of *Thomas v. LTV Corp.,* 39 F.3d 611 (5th Cir.1994), is particularly instructive. In *Thomas,* the employee, a member of the union, had a history of poor attendance and was presented with an attendance probation agreement. *Id.* at 614. His continued employment was conditioned upon acceptance of the agreement which set forth minimum attendance requirements for one year. *Id.* Failure to meet the requirements would result in immediate discharge without the benefit of the grievance or arbitration procedures set forth in the CBA. *Id.* The agreement was signed by the employee, his union steward, and the employer. *Id.* After the employee suffered an on-the-job injury, his absences exceeded the minimum attendance requirements of the agreement and he was discharged. *Id.* at 614–15. Although the employee did grieve the termination, he ultimately filed suit in state court asserting several causes of action, including breach of contract. *Id.* at 615.

**\*5** The plaintiff in *Thomas* argued that his breach of contract claim should not be preempted because the probation agreement constituted an employment contract independent of the CBA which governed the terms of his continued employment. *Id.* at 616–17. The Court rejected this argument on the basis that the probation agreement limits or conditions the terms of employment, a subject addressed by the CBA. *Id.* at 618. The Court also found that the probation agreement "technically qualifies as a CBA because it is a collectively bargained instrument, manifesting a disciplinary action taken by [the employer] for [the employee's] poor work attendance." *Id.* Since "collective bargaining" is "bargaining by an organization or group of workmen on behalf of its members with the employer, as well as the settlement of disputes by negotiation between an employer and the representative of his employees," the attendance probation agreement qualified as a CBA. *Id.* at 618. The plaintiff's claims under the CBA and his disciplinary agreement were preempted by the LMRA *Id.* at 619.

The same results should be reached here. The Last Chance Agreement followed disciplinary action taken by Boston Edison and involved terms of employment. The Union co-signed the agreement with Connolly and the employer. Where, as here, the plaintiff's claim "is substantially dependent on the terms of the Last Chance Agreement and collective bargaining agreement," it is preempted. *Nuzzo v. Northwest Airlines, Inc.,* 887 F.Supp. 28, 31 (D.Mass.1995).

**2.** *Wrongful Termination*

In Count I of his complaint for "wrongful discharge," Connolly contends that the Last Chance Agreement he signed was "void against public policy," that he was treated more severely than others in similar circumstances, and that he suffered from "discriminatory treatment." (Complaint ¶¶ 13–15). Even assuming, *arguendo,* that this claim states a cause of action, it is preempted by § 301. However, Connolly is not able to assert this claim.

As an initial matter, the cause of action for wrongful discharge in violation of public policy applies only to "at-will" employees, not to an employee who is covered by a CBA. *Cullen v. E.H. Friedrich Co.,* 910 F.Supp. 815, 821 (D.Mass.1995). To conclude otherwise "would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." *Id.,* quoting *Azzi v. W. Elec. Co.,* 19 Mass.App.Ct. 406, 410, 474 N.E.2d 1166, 1169 (1985), citations omitted. Moreover, a cause of action will lie only if the employer "violates a clearly established public policy." *Upton v. JWP Businessland,* 425 Mass. 756, 757, 682 N.E.2d 1357, 1358–59 (1997) (citing cases). Connolly has failed to satisfy either prerequisite to his "public policy" claim.

Connolly argues, without citation, that since by signing the Last Chance Agreement he waived his right to grieve a termination made pursuant to that Agreement, he became an "at-will" employee. (Pl. Opp. at 6). No support for this proposition has been found. Connolly clearly remained obligated to follow the CBA grievance procedure for all matters outside the Last Chance Agreement, so the terms and conditions of his employment remained subject to the main CBA.[7] *See Davis v. Bell Atlantic–West Virginia, Inc.,* 110 F.3d 245, 249 (4th Cir.1997) (CBA continued to govern employment relationship except to extent it was modified by settlement agreement reached following grievance). Moreover, the distinction between an "at-will" employee and a contractual employee is not the existence of a grievance procedure. Connolly has a contract which controlled his employment with Boston Edison. The contract consisted of the CBA as supplemented by the Last Chance Agreement. Finally, by waiving his right to grieve a termination made pursuant to the Last Chance Agreement, Connolly did not waive his right to challenge the termination totally. As discussed more fully below, he was still able to bring suit in accordance with the provisions of § 301 of the LMRA. *See id.* at 247–49 (following waiver of grievance procedure in settlement agreement, employee must bring suit within LMRA time limitations); *Thomas,* 39 F.3d at 618–19, 621 (waiver of

grievance procedure appropriate in disciplinary agreement between employer, union and employee; except for time ban, employee could bring suit under § 301). Thus, under Massachusetts law, Connolly could not bring a "wrongful termination" claim which is only available to at-will employees. *See Hinchey v. NYNEX Corp.,* 144 F.3d 134, 145 (1st Cir.1998), and cases cited.

***6** In addition, Connolly has failed to identify the "well-defined public policy" which Boston Edison allegedly violated. *Id. See also Delmonte v. Laidlaw Envtl. Servs., Inc.,* 46 F.Supp.2d 89, 97–98 (D.Mass.1999) (the "public policy exception" to the at-will doctrine is "narrow," and conduct must "directly contradict well-defined public policies of the Commonwealth") (citations omitted). There is no absolute right to be free of drug testing in this Commonwealth. *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111, 117–21 (1st Cir.), *cert. denied,* 490 U.S. 1107 (1988) (discharging an employee in connection with a drug testing program does not violate public policy); *Folmsbee v. Tech. Tool Grinding & Supply, Inc.,* 417 Mass. 388, 394–95, 630 N.E.2d 586, 590 (1994). Thus, Connolly's claim of wrongful termination fails to state a claim.

Assuming, *arguendo,* that Connolly has stated a claim for wrongful discharge, it is preempted by § 301. Since the CBA "sets forth the terms and scope of the employment relationship," the question whether he was wrongfully terminated would require a court "to immerse itself in the CBA's terms. Interpretation of the CBA is therefore crucial to any resolution of [Connolly's] claim." *Quesnel,* 66 F.3d at 10–11 (plaintiff claims dismissal for wrongful purpose of depriving him of commissions; court finds claim preempted under § 301); *Cullen,* 910 F.Supp. at 821–22 (assuming plaintiff stated claim of wrongful discharge in violation of public policy where termination allegedly due to reporting of drug usage at workplace, it would be preempted under § 301 since it would require interpretation of termination provision of CBA) and cases cited; *Voda v. N.E. Tel. & Tel. Co.,* 580 F.Supp. 852, 854 (D.Mass.1984) (plaintiff's claims of wrongful treatment are preempted since "a charge of unfair treatment is cognizable under the collective bargaining agreement"). For these reasons, the motion to dismiss should be allowed.

### 3. *Invasion of Privacy*

Connolly claims that the drug test required by Boston Edison violated his right to privacy. However, the merits of this claim, too, are preempted by § 301 as they are intimately intertwined with the CBA.

It is clear that § 301 cannot be read so broadly as to preempt nonnegotiable rights which have been conferred on employees as a matter of state law. *Livadas v. Bradshaw,* 512 U.S. 107, 123–24, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994). It is also clear that drug testing involves an individual's privacy rights. *See Folmsbee v. Tech. Tools Grinding & Supply, Inc.,* 417 Mass. 388, 392, 630 N.E.2d 586, 589 (1994). However, there is not a "nonnegotiable right" to be free of drug testing. To determine whether drug testing violates an employee's right to privacy under Mass. Gen. Laws ch. 214, § 1B, an employee's right to privacy must be balanced against an employer's legitimate business interest in knowing whether its employees are using drugs. *Webster v. Motorola, Inc.,* 418 Mass. 425, 431–32, 637 N.E.2d 203, 206–07 (1994), and cases cited. And that analysis involves an interpretation of the CBA. *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111 (1st Cir.1988).

***7** *Jackson* decided the issue raised by the present motion to dismiss: whether state law claims for invasion of privacy were preempted by § 301 of the LMRA where the employer had imposed a drug testing program based on its management authority as found in a collective bargaining agreement. As the court concluded, there is no absolute right to be free of drug testing under Massachusetts[8] or federal law. *Id.* at 115. "A right subject to a balance involving the needs and interests of the parties is, almost of necessity, defined by the parties themselves." *Id.* at 117. Since the CBA is "the only legitimate outlet for managerial regulations which may affect the continued employment and working conditions of the employees," the *Jackson* court ruled, the state-law claim must look to the rights defined under the CBA and is "inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 117–18, quoting *Lueck,* 471 U.S. at 213, 105 S.Ct. at 1912. In Connolly's case, as in *Jackson,* the privacy claims are inseparable from an interpretation of what is "reasonable" under the CBA, and thus the invasion of privacy claim is preempted under § 301. *Id.* at 118–20, and cases cited. *See also Flibotte v. Pa. Truck Lines, Inc.,* 131 F.3d 21, 26–28 (1st Cir.1997), and cases cited (claims of wrongful termination for failure to take drug test preempted under § 301 regardless of "tort" label). *Accord Kelly v. Mercoid Corp.,* 776 F.Supp. 1246, 1254–55 (N.D.Ill.1991), and cases cited (claims challenging drug testing on privacy and other grounds preempted under § 301 since claims are substantially dependent on CBA's which govern working conditions).

### C. § 301 Litigation

The fact that plaintiff's claims are preempted by § 301 of the LMRA does not end the inquiry. An aggrieved employee still has the right to bring a suit in federal court. First, "the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 914 (1967), *quoted in Magerer v. John Sexton & Co.,* 912 F.2d 525, 531 (1st Cir.1990). Then "he must also establish that his union breach its duty of fair representation." *Vaca,* 386 U.S. at 186, 87 S.Ct. at 914. For purposes of this motion to dismiss, the court will assume that Connolly has satisfied these prerequisites to suit.

#### 1. *Exhaustion of Administrative Remedies.*

After failing the first drug test, Connolly obviously engaged in some sort of grievance procedure, since the Union was a party to the Last Chance Agreement. As part of that Agreement, Connolly waived any further grievance procedures in the event he was terminated under the Agreement. Boston Edison argues, and Connolly does not contend otherwise, that Connolly is deemed to have exhausted his contractual remedies and could proceed to litigation.[9] *See Davis,* 110 F.3d at 247–49, where the court rejected an employee's claim that preemption did not apply since she had waived her grievance rights in a settlement agreement reached in resolution of a disciplinary action. As the court held, in language applicable to the instant case, the settlement agreement "may fairly be characterized as a rider to the collective bargaining agreement" and thus preemption applies. *Id.* at 249. Litigation is the next step and it must be brought in accordance with the LMRA. *Id.*

#### 2. *Claims Against The Union*

**\*8** Having exhausted his contractual remedies, in order for Connolly to maintain an action for breach of contract against his employer, he must also establish that his union breached its duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). The suit comprises of two causes of action: one against the employer with the employee alleging breach of the collective bargaining agreement and the other against the union with the employee alleging breach of the union's duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). "The two claims are inextricably interdependent: To prevail against either the company or the Union, the employee-plaintiff must not only show that his discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union ." *Id.* at 164–65, 103 S.Ct. at 2291. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other or both." *Id.* at 165, 103 S.Ct. at 2291. To meet his burden of proof as to the union's breach of its duty of fair representation, Connolly must establish by substantial evidence that the union acted arbitrarily, discriminatorily or with bad faith. *See Vaca,* 386 U.S. at 190, 87 S.Ct. at 916. This action is known as a "hybrid" action under § 301.

Boston Edison contends that the allegations in the complaint are insufficient to support a claim that the union breached a duty of fair representation. The complaint merely alleges that Connolly signed the Last Chance Agreement "without proper advice from his Union." (Complaint ¶ 7). There is no need for this court to address the sufficiency of this pleading. If it is insufficient, leave to amend would likely be granted. However, as the plaintiff's suit is not timely, no leave to amend is appropriate.

#### 3. *Timeliness*

A six month statute of limitations controls a "hybrid" suit brought under § 301 alleging a breach of contract against the employer and failure of proper representation against the union. *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294; *Mouradian v. John Hancock Cos.,* 930 F.2d 972, 973 (1st Cir.1991). Here, the plaintiff's employment was terminated on February 8, 1999, the outside date of when his cause of action accrued. Suit was not filed until August 23, 2000, well beyond the six month period. The plaintiff's claims are, therefore, time-barred.

### CONCLUSION

For the reasons detailed herein, I recommend that the defendant's motion to dismiss be ALLOWED.[10]

**Connolly v. Boston Edison Co., Not Reported in F.Supp.2d (2001)**

Footnotes

1  Boston Edison has filed an affidavit to establish that plaintiff was subject to a collective bargaining agreement and has submitted a copy of the agreement to the court. (*See* McGuire Aff. at ¶ 5 and Ex. 1). At oral argument the plaintiff stated that he had no objection to the court's consideration of this information in connection with the motion to dismiss. In any event, it does not matter whether this motion is treated as a motion to dismiss or a motion for summary judgment, since the question of preemption by the LMRA is a question of law. *Quesnel v. Prudential Ins. Co.,* 66 F.3d 8, 11 n. 4 (1st Cir.1995).

2  The CBA includes a Drug and Alcohol Policy Agreement Addendum which was in effect between May 1994 and May 15, 2000. (*See* McGuire Aff. ¶ 4 and Ex. 2). It appears that initially only employees in the CDL program were expressly subject to testing. By January 1, 1999, however, all employees were expressly subject to random drug testing. (*Id.*)

3  Boston Edison submitted the Last Chance Agreement as part of its motion to dismiss. (Exhibit B to Defendant's Memorandum of Law (Def.Ex. B)). The plaintiff has no objection to this court considering the Agreement, and its inclusion in the record by Boston Edison does not alter the status of the motion to dismiss since it was specifically referenced and discussed in the Complaint. *See Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993) (on a motion to dismiss, court may consider documents "sufficiently referred to in the complaint").

4  Boston Edison requested in its Reply Memorandum that this court strike the references to the DET findings in the complaint as they are allegedly inadmissible under Mass. Gen. Laws ch. 151A, § 46. That statute applies to "information secured" by DET and does not appear to relate to the decision by DET. Moreover, the statute authorizes the release of information relating to the claimant's record to the claimant. *See* Mass. Gen. Laws ch. 151A, § 46(c)(2). The motion to strike the references in the complaint is DENIED.

5  Although the complaint refers to Mass. Gen. Laws ch. 149, § 52A (absence due to military service), at oral argument the plaintiff admitted that this was an incorrect cite. It is apparently a claim for wrongful discharge in violation of public policy.

6  Again, the citation in the complaint to Mass. Gen. Laws ch. 93, § 102 (Equal Rights Act) is incorrect. Plaintiff admits that the complaint is for violation of Mass. Gen. Laws ch. 214, § 1B ("[a] person shall have the right against unreasonable, substantial or serious interference with his privacy").

7  The Last Chance Agreement provides only that "[i]f Mr. Connolly is discharged in accordance with paragraph 2 or 3 of this agreement such discharge shall not be subject to the grievance procedure or arbitration." (Def.Ex. B).

8  Although *Jackson* predates the Massachusetts cases which address employer drug testing vis-a-vis privacy rights, its analysis that Massachusetts would not recognize an absolute right to be free of drug testing (863 F.2d at 116–17) has been confirmed by later cases. *See Webster,* 418 Mass. at 431–32, 637 N.E.2d at 206–07, and cases cited.

9  Connolly contends only that waiver of the grievance process converted him to an "at will" employee. (Pl. Opp. at 6). As detailed above, that argument is without merit.

10  The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4–5 (1st Cir.1998).

**End of Document**   © 2014 Thomson Reuters. No claim to original U.S. Government Works.