UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL DEGRANDIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. |
| v. ) | 14-10416-FDS |
| ) | |
| CHILDREN'S HOSPITAL BOSTON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is an employment dispute. Plaintiff Paul DeGrandis has brought suit against his former employer, defendant Children's Hospital Boston, alleging that the hospital unlawfully terminated his employment. The complaint alleges breach of contract; breach of a collective-bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; and breach of the implied covenant of good faith and fair dealing.

Defendant has moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, that motion will be granted as to the claim for breach of contract (Count 1) and the claim for breach of the implied covenant (Count 3), and otherwise denied.

**I. Background**

    **A. Factual Background**

The facts are summarized below as set forth in the complaint unless otherwise noted.

Paul DeGrandis is a citizen of Florida. Children's Hospital Boston is a hospital located

in Boston, Massachusetts.

In September 2003, DeGrandis was hired by Children's Hospital to work as a carpenter. His starting salary was $25.80 per hour.

At all times relevant to the complaint, Children's Hospital was a party to a collective-bargaining agreement with the International Union of Operating Engineers, Local 877, AFL-CIO. The union represented various labor organizations, including the New England Regional Council of Carpenters. While working for Children's Hospital, DeGrandis was a member of the union. He participated in the union's central pension fund.

The CBA was originally effective from October 1, 2002, until September 30, 2007. It was automatically extended each year unless a party gave ninety days' notice of the agreement's termination. The CBA provided in part as follows:

> The Hospital shall have the right to discharge, suspend, or discipline any employee for just cause, which shall include, but not be limited to, the following grounds: incompetence in performing his assigned duties; abusive or inconsiderate treatment of patients, visitors, volunteers, or fellow employees; insubordination; material misrepresentation on employment applications; the use of profane or obscene language; stealing; unauthorized possession of Hospital property; consumption of alcoholic beverages or intoxication while in the Hospital or on the Hospital grounds; unlawful use of drugs or being under the influence of any drug while in the Hospital or on the Hospital grounds; willful and deliberate destruction or damage to Hospital supplies and/or equipment; disruption of Hospital routine; fighting; and conduct detrimental to the best interests of the Hospital, personnel, volunteers, patients, and visitors.

(Compl., Ex. 1 art. 23.1). In addition, the CBA outlined some of Children's Hospital's management rights, stating:

> Except as there is contained in this Agreement an express provision limiting the rights or discretion of the Hospital, all rights, functions, and prerogatives of the management of the Hospital formerly exercised or exercisable by the Hospital remain vested exclusively in the Hospital administration. Without limiting the generality of the foregoing, the Hospital reserves to itself exclusively, the management of the Hospital; the maintenance of discipline, order and efficiency, the determination of operational policies; the right to

2

subcontract work of a type normally done by members of the bargaining unit . . . ; the direction of the working force; the assignment of work; the procedures by which to establish and maintain the record of hours worked; the right to hire, transfer, and promote; the right to lay off employees for lack of work; the right, from time to time, and whenever in the Hospital's judgment it is necessary, to transfer employees temporarily from one job to another; the right to promulgate and enforce all reasonable rules and regulations relating to the operation of the Hospital, care of patients, and safety measures.

(Def. Mem., Ex. B art. 22.1).

Articles 17 and 18 of the CBA set up a grievance and arbitration procedure for "the settlement of grievances which involve the interpretation and application of a specific provision of" the CBA. (*Id.* art. 17.1). Article 17 provided that "[a]ll such grievances will be handled as provided in this Article." (*Id.*). Grievances that were not settled would be submitted to binding arbitration. (*Id.* art. 18).

During his employment, DeGrandis was supervised by William Connelly. From 2004 through 2006, DeGrandis received positive employment evaluations. In each year, he met the job performance standards for his employment. For example, his evaluation in 2004 stated that "Paul's knowledge of the tools of his trade are apparent in his work" and "Paul makes an extra effort to help others." (Compl., Ex. 2 at 6, 12). His 2005 evaluation stated that "Paul is very good at completing the work that has been assigned to him." (Compl., Ex. 3 at 5). His 2006 evaluation stated that "Paul pays attention to priority calls and completes as many as he can as soon as he can." (Compl., Ex. 4 at 7).

DeGrandis contends, however, that Connelly harassed him and used foul language with him. According to the complaint, "it became clear over time to DeGrandis that Connelly did not like [DeGrandis] and wanted to terminate his employment." The complaint alleges that Connelly reported misleading information to Children's Hospital to manufacture just cause for

3

terminating DeGrandis's employment.

On June 29, 2007, DeGrandis injured himself at work lifting a barrel weighing more than fifty pounds. His injury was reported to the workers' compensation carrier. He returned to work on July 2.

On July 19, DeGrandis injured his left ankle at work. The accident was also reported to the workers' compensation carrier. DeGrandis returned to work on July 23.

Shortly after those work-related accidents, Children's Hospital proposed terminating DeGrandis's employment. In response, he filed a grievance through the union.

On July 30, DeGrandis injured his back at the workplace and was unable to work until August 6. The workers' compensation carrier was again informed of the injury.

On July 31, DeGrandis, represented by the union, entered into a memorandum of agreement with Children's Hospital. That agreement stated:

> All parties hereby agree as a full and final resolution of the Union's grievance for Mr. Paul DeGrandis over proposed discipline for poor work performance, that any further failure to comply with the Employer's generally applicable work standards during the 12 month period following the date of this agreement shall be grounds for immediate termination, and that termination on that basis shall not be subject to the grievance and arbitration provision of the parties' collective bargaining agreement.

(Compl., Ex. 5).

In 2007, DeGrandis received a performance evaluation that stated that he did not meet his job performance standards that year. The evaluation stated that "Although it has been noted that Paul has completed work assigned to him, the work that he does takes a long time, well over the industry standard for a carpenter." (Compl., Ex. 6 at 5). It also stated that "Paul['s] limited knowledge in construction of cabinetry has limited him in types of requests he can perform." (*Id.* at 6).

4

On January 23, 2008, DeGrandis slipped on spilled coffee on a step at work, injuring his ankle. That injury was reported to the workers' compensation carrier. He returned to work in early February 2008.

Shortly thereafter, Connelly assigned DeGrandis to repair, among other things, a broken shelf. DeGrandis determined that the shelf could not be repaired and needed to be replaced. which would take more time than he was allotted. He informed his immediate superior of his determination.

The following day, Connelly complained to DeGrandis that the shelf was still broken. DeGrandis then made and installed a new shelf.

Connelly then contacted his supervisor, Paul Williams, seeking termination of DeGrandis's employment. On February 29, 2008, DeGrandis's employment was terminated. According to the termination notice, he was fired for "failure to meet job performance standards." (Compl., Ex. 9).

DeGrandis's employment was terminated ten weeks before his pension vested. The termination also occurred after he had been injured on the job and had filed a workers' compensation claim.

B.  **Procedural Background**

On February 25, 2014, DeGrandis filed the complaint in this case. It alleges (1) breach of contract; (2) breach of the collective-bargaining agreement under the LMRA; and (3) breach of the implied covenant of good faith and fair dealing.

On July 8, 2014, defendant filed a motion to dismiss. It contends that (1) the state-law claims are preempted by the LMRA, (2) the complaint fails to state a LMRA claim because it

does not allege wrongdoing by the union, and (3) the LMRA claim was not filed within the applicable limitations period.

## II. Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted)

## III. Analysis

### A. State-Law Claims

#### 1. Preemption Under Section 301 of the LMRA

Defendant first contends that plaintiff's state-law claims are preempted by the LMRA. Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship

of the parties.

29 U.S.C. § 185(a).

The doctrine of complete preemption "applies where a purported state claim . . . is re-characterized as a federal claim . . . . The most familiar example is a claim brought under state contract law to enforce a CBA subject to federal jurisdiction under section 301 of the LMRA." *Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 4–5 (1st Cir. 2012). As the *Cavallaro* court explained:

> The complete preemption doctrine grew out of the [Supreme] Court's holding that (1) section 301 required the federal courts to create a body of federal common law for CBAs affecting interstate commerce; (2) this body displaced state contract law; and (3) by this alchemy the purported state claim became a federal contract claim allowing removal as one within the federal "arising under" jurisdiction under section 1441(b).

*Id.* at 5 (internal citations omitted). The doctrine "applies most readily to state-law contract claims purporting to enforce CBAs covered by Section 301, but it extends beyond this point to other claims whose enforcement interferes with federal labor law and policy." *Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54 (1st Cir. 2011) (internal quotations and alterations omitted).

Thus, "state law claims are preempted under Section 301 if they 'require construing the collective-bargaining agreement' because of the congressional interest in uniform interpretation of collective bargaining agreements." *O'Donnell v. Boggs*, 611 F.3d 50, 54 (1st Cir. 2010) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)). In this circuit, a state-law claim is preempted "when 'the asserted state-law claim plausibly can be said to depend on the meaning of one or more provisions within the collective bargaining agreement.'" *Haggins*, 648 F.3d at 55 (quoting *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st

7

Cir. 1997)). A state-law claim depends on the meaning of a collective-bargaining agreement "if either (1) 'it alleges conduct that arguably constitutes a breach of duty that arises pursuant to a collective bargaining agreement,' or (2) 'its resolution arguably hinges on an interpretation of the collective bargaining agreement.'" *Id.* (quoting *Flibotte*, 131 F.3d at 26). However, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 10 (1st Cir. 1999) (internal quotations omitted).

The complaint alleges two state-law claims: breach of contract and breach of the implied covenant of good faith and fair dealing. Defendant contends that both claims require interpretation of the collective-bargaining agreement.

The breach-of-contract claim alleges that defendant violated the memorandum of agreement the parties entered into on July 31, 2007. As described above, the memorandum provided that for a twelve-month period plaintiff could be terminated without recourse to the normal grievance procedures if he did not comply with defendant's "generally applicable work standards." (Compl., Ex. 5).

Plaintiff contends that district courts have split on whether agreements such as that embodied in the memorandum arise out of federal or state law, citing *Bobik v Thepitt Mfg. Co.*, 1992 WL 317550 (M.D. Pa. Aug. 10, 1992) and *Price v. Chrysler LLC*, 2009 WL 2208298 (E.D. Mo. Jul. 23, 2009). It is true that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987) (emphasis in original). However, even if legal rights

independent of a collective-bargaining agreement are asserted, a claim is still preempted if the assertion of those rights depends on the interpretation of a collective-bargaining agreement. *See Haggins*, 648 F.3d at 55; *see also Connolly v. Boston Edison Co.*, 2001 WL 575868, at *3 (D. Mass. May 15, 2001) ("It is obvious, then, that the CBA must be interpreted to resolve the breach of contract dispute, and the claim is therefore preempted.").

*Bobik* and *Price* are merely two applications of that rule. In *Bobik*, the separate agreement re-employed the plaintiff so long as he did not have "any occurrences of absenteeism" for a year. *Bobik*, 1992 WL 317550, at * 1. Because interpreting the absenteeism clause did not implicate the collective-bargaining agreement in that case, the plaintiff's claim for breach-of-contract arising out of his termination was not preempted. *Id.* at *2. In *Price*, the plaintiff challenged a clause in a separate agreement that waived his right to back pay, which also did not require consideration or interpretation of any provision in the collective-bargaining agreement. *Price*, 2009 WL 2208298, at *4.

The memorandum of agreement here allowed defendant to terminate plaintiff if he did not comply with its "generally applicable work standards." (Compl., Ex. 5). Defendant contends that its work standards are detailed throughout the CBA. For example, as described above, article 22.1 outlines some of Children's Hospital's management rights, such as the assignment of work and the determination of operational policies. (Def. Mem., Ex. B). The CBA also contains provisions concerning the termination of employment and working hours. The termination letter states that plaintiff was terminated "for failure to meet job performance standards." (*Id.*, Ex. 9). Thus, it appears that plaintiff's employment following the memorandum of agreement was subject to work standards that are explicitly authorized by the CBA.

9

The Sixth Circuit in *Jones v. General Motors Corp.*, 939 F.2d 380 (1991), described a similar situation:

> We are faced with a state law claim for breach of a settlement agreement. This agreement was arrived at by virtue of a grievance process established by a collective bargaining agreement, signed only by the parties engaged in collective bargaining, and promised reinstatement to a job whose terms and conditions are created by and subject to a collective bargaining agreement. The resolution of this claim will not involve the direct interpretation of a precise term of the CBA, but it will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA. Does this process require an "interpretation of the terms" of a CBA triggering § 301 pre-emption? The district court answered this question in the affirmative, and we agree.

939 F.2d at 382-83; *see also Davis v. Bell Atlantic-West Va., Inc.*, 110 F.3d 245, 249 (4th Cir. 997) ("[W]e recognize the settlement agreement in this case as merely a particular expression of rights and duties created by a collective-bargaining agreement. For that reason, § 301 preempts an alleged breach of the Union-negotiated agreement that settled an employee grievance."); *Thomas v. LTV Corp.*, 39 F.3d 611, 618 (5th Cir. 1994) (holding that § 301 preempts a state wrongful-discharge claim based on violation of an attendance probation agreement between a union and an employer); *Doyle v. Southeastern Pa. Transp. Auth.*, 398 Fed. Appx. 779, 782 (3d Cir. 2010) ("an agreement between a union and an employer regarding the terms under which an employee will return to work is a creature wholly begotten by the collective bargaining agreement" (internal quotations and alterations omitted)).

The facts in this case are similar to those in *Jones*. The memorandum of agreement arose out of a grievance procedure under which the union, plaintiff, and defendant agreed on the terms of plaintiff's continued employment. Those terms depend on rights that defendant had through the CBA. Plaintiff's breach-of-contract claim therefore depends on the meaning of the collective-bargaining agreement and is preempted by § 301 of the LMRA. *See Jones*, 939 F.2d

at 382-83; *Davis*, 110 F.3d at 249.

Likewise, the claim for breach of the implied covenant arises out of "the relationship between [plaintiff] and [defendant]." (Compl. ¶ 72). That relationship is defined by the CBA and the memorandum of agreement. Any claims arising out of that relationship are therefore preempted by the LMRA.[1]

"A claim that is preempted under § 301 'must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law.'" *Haggins*, 648 F.3d at 57 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). Plaintiff has already asserted a claim under § 301, and thus converting the state-law claims is unnecessary. Accordingly, the motion to dismiss will be granted as to the claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## B.    LMRA Claim

Defendant next contends that the LMRA claim should be dismissed because it does not allege wrongdoing by plaintiff's union.

### 1.    Characterization of the Claim

As noted above, Section 301 of the LMRA authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Despite the language of that provision, the Supreme Court has plainly "held that § 301 authorizes 'suits by and against individual employees as well as between

---

[1] Plaintiff contends that it is premature to dismiss the claim for breach of the implied covenant because defendant could later contend that he was an at-will employee. However, on a motion to dismiss, the factual allegations in the complaint are assumed to be true. *Ruiz*, 496 F.3d at 5. The complaint alleges that plaintiff could only be fired for "just cause" under the CBA and for failure to comply with "generally applicable work standards" under the memorandum of agreement. (Compl. ¶ 52). Defendant has not contended that it is not bound by the CBA or the memorandum of agreement.

unions and employers,' including actions against an employer for wrongful discharge." *Groves v. Ring Screw Works, Ferndale Fastener Div.*, 498 U.S. 168, 172 (1990) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976)). A claim by an employee against his or her employer for violation of a CBA is akin to a straight breach-of-contract claim. *See, e.g.*, *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*, 822 F.2d 188, 191 (1st Cir. 1987).

"Collective-bargaining contracts, however, generally contain procedures for the settlement of disputes through mutual discussion and arbitration." *Hines*, 424 U.S. at 563. Thus, "where a collective bargaining contract provides for a grievance and arbitration procedure, an employee must ordinarily exhaust such procedures before his or her suit will be heard in court." *Confederacion Laborista De Puerto Rico v. Cerveceria India, Inc.*, 778 F.2d 65, 66 (1st Cir. 1985) (per curiam); *see also DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163 (1983).

Under the LMRA, it is also unlawful "for any labor organization to engage in any activity or conduct defined as an unfair labor practice" by the statute. 29 U.S.C. § 187(a). Any person injured by a labor organization's violation of the LMRA can bring suit in federal court. *Id.* § 187(b). Thus, the Supreme Court has recognized that where an employee has not exhausted the grievance or arbitration remedies in a collective-bargaining agreement but "the union representing the employee . . . acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation . . . an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *DelCostello*, 462 U.S. at 164.

Such claims are called LMRA "hybrid" claims. *See, e.g.*, *Balser v. International Union*

12

*of Elec., Elec., Salaried, Mach. & Furniture Workers (IUE) Local 201*, 661 F.3d 109, 118 (1st Cir. 2011). To prevail on a hybrid claim, "the plaintiff 'must prove both that the employer broke the CBA and that the union breached its duty of fair representation, in order to recover against either entity.'" *Id.* (quoting *Chaparro-Febus v. International Longshoreman Ass'n, Local 1575*, 983 F.2d 325, 330 (1st Cir. 1992) (internal alterations omitted)).

The complaint here alleges that defendant considered terminating plaintiff's employment in July 2007. Plaintiff was represented by the union and went through the formal grievance process, which resulted in the July 31 memorandum of agreement with defendant. Neither the complaint nor defendant allege misconduct by the union in the negotiation of the memorandum. Thus, the complaint alleges a straight breach-of-contract claim rather than a "hybrid" claim under the LMRA. *See Cabarga Cruz*, 822 F.2d at 191 (holding that the claim was a straight breach-of-contract claim where the district court "found no evidence that the union was guilty of unfair representation").

### 2. Whether Plaintiff Can Bring a Straight Breach-of-Contract Claim

Defendant contends that under *DelCostello*, plaintiff is required to bring a hybrid claim. That contention is based on the assumption that plaintiff cannot bring a straight breach-of-contract claim under the LMRA for violation of the memorandum of agreement.

"As preconditions to suing their employers under Section 301 for breach of a CBA, employees generally must be willing to (1) exhaust the CBA's grievance procedures and (2) abide by the CBA's finality provisions." *Ramírez-Lebrón v. International Shipping Agency, Inc.*, 593 F.3d 124, 131 (1st Cir. 2010). In general, "[a] CBA generally provides for the *final, binding* resolution of labor disputes through grievance procedures in which the union fairly represents the aggrieved employee(s)." *Id.* (emphasis in original). The purpose of § 301 of the

13

LMRA is "to promote the integrity of such an agreement according to its terms." *Id.* Thus, courts often refuse to review the merits of the arbitration award under the finality provisions of collective-bargaining agreements. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

The CBA provides that all grievances that "involve the interpretation and application of a specific provision in" the CBA "will be handled as provided" in the CBA, and that "[n]o grievance shall be considered under the grievance procedure unless it is presented as provided." (Def. Mem., Ex. B arts. 17.1, 17.2). If a grievance is settled during the grievance procedure, "it shall be considered closed and shall not thereafter be subject to the grievance procedure or to arbitration." (*Id.* art. 17.2). Finally, the CBA provides for arbitration if a grievance "has not been settled after being fully processed through the grievance procedure." (*Id.* art. 18.1). "The award of the arbitrator on any grievance properly submitted to him . . . shall be final and binding upon the parties." (*Id.* art. 18.2).

According to the complaint, defendant considered disciplining plaintiff for poor work performance by terminating his employment. Plaintiff went through the formal grievance process as outlined in the CBA, and was represented by the union during the process. The result of the process was the memorandum of agreement that purported to be "a full and final resolution of the [u]nion's grievance for [plaintiff]." (Compl. Ex. 5). The memorandum stated that "any further failure [by plaintiff] to comply with [defendant's] generally applicable work standards . . . shall be grounds for immediate termination, and that termination on that basis shall not be subject to the grievance and arbitration provision of the parties' collective bargaining agreement." (*Id.*).

Thus, when plaintiff was allegedly improperly fired, the memorandum barred him from

resorting to the grievance and arbitration proceedings of the CBA. Defendant contends that he therefore has no recourse except for a hybrid § 301 claim alleging that his union breached its duty of fair representation to him when negotiating the terms of the memorandum. *See Connolly*, 2001 WL 575868, at *8.

However, a separate cause of action under § 301 is available when an employer has repudiated the grievance and arbitration procedures of a CBA. As the First Circuit has explained:

> [C]ircumstances may arise . . . where the union has *not* wrongfully refused to process the employee's grievance, and thus the employee has no cause of action against the union for breach of the duty of fair representation. But such circumstances do not in themselves foreclose the employee's breach of contract action against the employer under Section 301.

*Ramirez-Lebron*, 593 F.3d at 134 (citing *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)). Thus, an employee can "maintain a Section 301 suit against an employer for breach of a CBA . . . where the employer through its conduct repudiates the applicable provisions of the CBA." *Id.* at 133-34. Thus, the complaint's failure to allege misconduct on the union's part is not fatal to the LMRA claim if defendant repudiated the grievance and arbitration procedures in the CBA.[2]

In this case, the memorandum of agreement is silent as to how disputes arising out of the agreement are handled. Because the memorandum is an extension of the CBA, any disputes would normally be subject to the grievance and arbitration procedures of the CBA. However, the memorandum specifically repudiates those grievance and arbitration procedures. Thus, the parties agreed to not employ the CBA's procedures when settling disputes arising out of the

---

[2] Defendant cites *Connolly* for the proposition that an employee can only bring a hybrid claim under the LMRA if he or she has exhausted the contractual remedies in a CBA. *See* 2001 WL 575868, at *8. *Connolly* did not, however, discuss whether the employer in that case had repudiated the grievance and arbitration provisions of the CBA.

memorandum of agreement. A claim under § 301 of the LMRA is therefore the only remedy for a violation of the memorandum. *See Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 291 (6th Cir. 2014) (recognizing that "'a party may enforce a settlement agreement [under a CBA that is reached short of formal arbitration] in federal court without first submitting the controversy to an arbitrator' . . . when 'the agreement is final and binding on the parties'" (quoting *Bakers Union Factory No. 326 v. ITT Cont'l Baking Co.*, 749 F.2d 350, 355 (6th Cir. 1984)).

The complaint alleges that plaintiff's employment could only be terminated under the memorandum of agreement if he failed to meet defendant's generally applicable work standards. It also alleges that his employment was terminated even though he did not fail to meet those standards. The complaint therefore alleges sufficient facts to state a claim for violation of the memorandum under § 301 of the LMRA.

### 3. Limitations Period

Finally, defendant contends that the LMRA claim was filed after the limitations period had expired. The LMRA contains no explicit time limits for claims arising under § 301. *See* 29 U.S.C. § 185; *Posadas de Puerto Rico Assocs., Inc. v. Asociacion de Empleados de Casino de Puerto Rico*, 873 F.2d 479, 480 (1st Cir. 1989). "Courts are therefore required to 'borrow the most suitable statute or other rule of timeliness from some other source.'" *Id.* (quoting *DelCostello*, 462 U.S. at 158). "When Congress fails to furnish an express statute of limitations in connection with enforcement of a federal right, a court's initial look must be to state law to isolate the most closely analogous rule of timeliness." *Id.*

In certain circumstances, however, importing state limitations periods can frustrate or

16

interfere with federal rule or policy. *Reed v. United Transp. Union*, 488 U.S. 319, 323–24 (1989). Thus, "a limitation period borrowed from elsewhere in federal law may be applied if 'two preconditions are met: (1) some federal rule of limitations provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal rule more suitable.'" *Posadas*, 873 F.2d at 480–81 (quoting *Communications Workers of Am., AFL-CIO v. Western Elec. Co.*, 860 F.2d 1137, 1139 (1st Cir. 1988)). Before importing a federal statute of limitations over a state-law one, "the borrowed federal rule must seem, all things considered, 'significantly more appropriate.'" *Id.* (quoting *Reed*, 488 U.S. at 324).

It is well-established that courts determining hybrid claims under § 301 of the LMRA should import the six-month limitations period from § 10(b) of the National Labor Relations Act, 25 U.S.C. § 151 *et seq*. *DelCostello*, 462 U.S. at 169-70; *Adorno v. Crowley Towing And Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). However, a state-law breach-of-contract claim is a closer analogy to a breach-of-contract claim under the LMRA than a claim under the NLRA. Thus, breach-of-contract claims under the LMRA are governed by the state-law statute of limitations for such claims. *Cabarga Cruz*, 822 F.2d at 191 (holding that because plaintiff's action "is essentially a breach of contract claim, the six month statute of limitations established in *DelCostello* does not apply"); *see also Communications Workers*, 860 F.2d at 1141 (noting that in "ordinary disputes over the meaning of contract terms . . . individualized rights are at stake, but systemic concerns are less directly jeopardized," and that therefore "the analogy to contract litigation outside the labor-management arena fits much better, and employment of a

generic state-law statute of limitations has considerably more to commend it").[3]

As noted above, the claim in this case is a straight breach-of-contract claim. The issue, as alleged in the complaint, is whether defendant terminated defendant's employment in violation of the memorandum of understanding; that is, whether he was terminated for failure to comply with defendant's generally applicable work standards or for some other reason. It is therefore more appropriate to borrow the limitations period for state-law contract claims than the limitations period from § 10(b) of the NLRA. *See Cabarga Cruz*, 822 F.2d at 191.

In Massachusetts, the limitations period for breach-of-contract claims is six years. Mass. Gen. Laws ch. 260, § 2. The period begins "at the time the contract is breached." *Berkshire Mut. Ins. Co. v. Burbank*, 422 Mass. 659, 661 (1996). The complaint alleges that plaintiff's employment was terminated on February 29, 2008. Thus, the six-year limitations period began that date and expired on February 28, 2014. The complaint was timely filed on February 25, 2014, three days before the limitations period expired.

Accordingly, the motion to dismiss as to the LMRA claim will be denied.

## IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED as to the breach-of-contract claim (Count 1) and the breach-of-the-covenant claim (Count 3), and otherwise DENIED.

---

[3] Defendant contends that a footnote in *DelCostello* suggests that the six-month limitations period applies even in non-hybrid claims under § 301 of the LMRA. That footnote states that "even if this action were considered as arising solely under § 301, the objections to use of state law and the availability of a well-suited limitations period in § 10(b) would call for application of the latter rule." *DelCostello*, 462 U.S. at 158 n.12. The language in *DelCostello* is far from clear or determinative, and subsequent First Circuit precedent controls the outcome of this case.

18

**So Ordered.**

                                                      /s/ F. Dennis Saylor
                                                     F. Dennis Saylor IV

Dated: September 11, 2014                  United States District Judge