# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAUL DEGRANDIS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 14-10416-FDS |
| CHILDREN'S HOSPITAL BOSTON, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER ON MOTION FOR RECONSIDERATION

SAYLOR, J.

This is an employment dispute. Plaintiff Paul DeGrandis has brought suit against his former employer, defendant Children's Hospital Boston, alleging that the hospital unlawfully terminated his employment. The complaint alleges breach of contract; breach of a collective-bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; and breach of the implied covenant of good faith and fair dealing.

Defendant moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Court granted defendant's motion as to the claim for breach of contract (Count 1) and the claim for breach of the implied covenant (Count 3), and otherwise denied it. Defendant moved to reconsider the Court's decision to deny its motion to dismiss with respect to the claim for violation of a collective-bargaining agreement in violation of LMRA § 301 (Count 2). In the alternative, defendant requested that the case be certified for interlocutory review. For the following reasons, that motion for reconsideration will be granted and Count 2 will be dismissed.

I.   **Background**

   A.   **Factual Background**

The facts are summarized below as set forth in the complaint unless otherwise noted.

Paul DeGrandis is a citizen of Florida. Children's Hospital Boston is a hospital located in Boston, Massachusetts.

In September 2003, DeGrandis was hired by Children's Hospital to work as a carpenter. His starting salary was $25.80 per hour.

At all times relevant to the complaint, Children's Hospital was a party to a collective-bargaining agreement with the International Union of Operating Engineers, Local 877, AFL-CIO. The union represented various labor organizations, including the New England Regional Council of Carpenters. While working for Children's Hospital, DeGrandis was a member of the union. He participated in the union's central pension fund.

The CBA was originally effective from October 1, 2002, until September 30, 2007. It was automatically extended each year unless a party gave ninety days' notice of the agreement's termination. The CBA provided in part as follows:

> The Hospital shall have the right to discharge, suspend, or discipline any employee for just cause, which shall include, but not be limited to, the following grounds: incompetence in performing his assigned duties; abusive or inconsiderate treatment of patients, visitors, volunteers, or fellow employees; insubordination; material misrepresentation on employment applications; the use of profane or obscene language; stealing; unauthorized possession of Hospital property; consumption of alcoholic beverages or intoxication while in the Hospital or on the Hospital grounds; unlawful use of drugs or being under the influence of any drug while in the Hospital or on the Hospital grounds; willful and deliberate destruction or damage to Hospital supplies and/or equipment; disruption of Hospital routine; fighting; and conduct detrimental to the best interests of the Hospital, personnel, volunteers, patients, and visitors.

(Compl., Ex. 1 art. 23.1). In addition, the CBA outlined some of Children's Hospital's

2

management rights, stating:

> Except as there is contained in this Agreement an express provision limiting the rights or discretion of the Hospital, all rights, functions, and prerogatives of the management of the Hospital formerly exercised or exercisable by the Hospital remain vested exclusively in the Hospital administration. Without limiting the generality of the foregoing, the Hospital reserves to itself exclusively, the management of the Hospital; the maintenance of discipline, order and efficiency, the determination of operational policies; the right to subcontract work of a type normally done by members of the bargaining unit . . . ; the direction of the working force; the assignment of work; the procedures by which to establish and maintain the record of hours worked; the right to hire, transfer, and promote; the right to lay off employees for lack of work; the right, from time to time, and whenever in the Hospital's judgment it is necessary, to transfer employees temporarily from one job to another; the right to promulgate and enforce all reasonable rules and regulations relating to the operation of the Hospital, care of patients, and safety measures.

(Def. Mem., Ex. B art. 22.1).

Articles 17 and 18 of the CBA set up a grievance and arbitration procedure for "the settlement of grievances which involve the interpretation and application of a specific provision of" the CBA. (*Id.* art. 17.1). Article 17 provided that "[a]ll such grievances will be handled as provided in this Article." (*Id.*). Grievances that were not settled would be submitted to binding arbitration. (*Id.* art. 18).

During his employment, DeGrandis was supervised by William Connelly. From 2004 through 2006, DeGrandis received positive employment evaluations. In each year, he met the job performance standards for his employment. For example, his evaluation in 2004 stated that "Paul's knowledge of the tools of his trade are apparent in his work" and "Paul makes an extra effort to help others." (Compl., Ex. 2 at 6, 12). His 2005 evaluation stated that "Paul is very good at completing the work that has been assigned to him." (Compl., Ex. 3 at 5). His 2006 evaluation stated that "Paul pays attention to priority calls and completes as many as he can as soon as he can." (Compl., Ex. 4 at 7).

3

DeGrandis contends, however, that Connelly harassed him and used foul language with him. According to the complaint, "it became clear over time to DeGrandis that Connelly did not like [DeGrandis] and wanted to terminate his employment." The complaint alleges that Connelly reported misleading information to Children's Hospital to manufacture just cause for terminating DeGrandis's employment.

On June 29, 2007, DeGrandis injured himself at work lifting a barrel weighing more than fifty pounds. His injury was reported to the workers' compensation carrier. He returned to work on July 2.

On July 19, DeGrandis injured his left ankle at work. The accident was also reported to the workers' compensation carrier. DeGrandis returned to work on July 23.

Shortly after those work-related accidents, Children's Hospital proposed terminating DeGrandis's employment. In response, he filed a grievance through the union.

On July 30, DeGrandis injured his back at the workplace and was unable to work until August 6. The workers' compensation carrier was again informed of the injury.

On July 31, DeGrandis, represented by the union, entered into a memorandum of agreement with Children's Hospital. That agreement stated:

> All parties hereby agree as a full and final resolution of the Union's grievance for Mr. Paul DeGrandis over proposed discipline for poor work performance, that any further failure to comply with the Employer's generally applicable work standards during the 12 month period following the date of this agreement shall be grounds for immediate termination, and that termination on that basis shall not be subject to the grievance and arbitration provision of the parties' collective bargaining agreement.

(Compl., Ex. 5).

In 2007, DeGrandis received a performance evaluation that stated that he did not meet his job performance standards that year. The evaluation stated that "Although it has been noted that

4

Paul has completed work assigned to him, the work that he does takes a long time, well over the industry standard for a carpenter." (Compl., Ex. 6 at 5). It also stated that "Paul['s] limited knowledge in construction of cabinetry has limited him in types of requests he can perform." (*Id.* at 6).

On January 23, 2008, DeGrandis slipped on spilled coffee on a step at work, injuring his ankle. That injury was reported to the workers' compensation carrier. He returned to work in early February 2008.

Shortly thereafter, Connelly assigned DeGrandis to repair, among other things, a broken shelf. DeGrandis determined that the shelf could not be repaired and needed to be replaced. which would take more time than he was allotted. He informed his immediate superior of his determination.

The following day, Connelly complained to DeGrandis that the shelf was still broken. DeGrandis then made and installed a new shelf.

Connelly then contacted his supervisor, Paul Williams, seeking termination of DeGrandis's employment. On February 29, 2008, DeGrandis's employment was terminated. According to the termination notice, he was fired for "failure to meet job performance standards." (Compl., Ex. 9).

DeGrandis's employment was terminated ten weeks before his pension vested. The termination also occurred after he had been injured on the job and had filed a workers' compensation claim.

### B. Procedural Background

On February 25, 2014, DeGrandis filed the complaint in this case. It alleged (1) breach

5

of contract; (2) breach of the collective-bargaining agreement under the LMRA; and (3) breach of the implied covenant of good faith and fair dealing.

On July 8, 2014, defendant moved to dismiss for failure to state a claim. It contended that (1) the state-law claims are preempted by the LMRA, (2) the complaint fails to state a LMRA claim because it does not allege wrongdoing by the union, and (3) the LMRA claim was not filed within the applicable limitations period. With respect to the LMRA claim, defendant contended that plaintiff is required to bring a "hybrid" claim against both defendant and the union, and the claim does not allege wrongdoing by plaintiff's union. Defendant cited to *Connolly v. Boston Edison Co.* for the proposition that plaintiff could only bring a hybrid claim under the LMRA because he had exhausted the contractual remedies in the CBA. (Def.'s Mem. Support Mot. Dismiss 14-15 n.5 (citing 2001 WL 575868, at *8 (D. Mass. May 15, 2001))).

On September 11, 2014, the Court issued a memorandum and order, granting defendant's motion as to the claim for breach of contract (Count 1) and the claim for breach of the implied covenant (Count 3), and denying it as to Count 2, the claim for breach of the collective bargaining agreement in violation of LMRA § 301. The Court concluded that because the complaint did not allege misconduct by the union, it alleged a straight breach-of-contract claim rather than a "hybrid" claim under the LMRA. In its memorandum and order, the Court cited to *Ramirez-Lebron v. International Shipping Agency, Inc.*, 593 F.3d 124 (1st Cir. 2010), in finding that a separate cause of action under § 301 is available when an employer has repudiated the grievance and arbitration procedures of a CBA. The Court concluded that plaintiff's straight breach-of-contract claim was permissible because defendant repudiated the grievance and arbitration procedures in the CBA when it entered into the memorandum of agreement. (Mem &

6

Order 15-16).

Defendant has filed a motion for reconsideration with respect to the Court's decision as to Count 2. It contends that the Court's holding with respect to Count 2 was erroneous for three reasons: (1) there was no basis for the Court to consider the issue of repudiation; (2) even if the issue of repudiation were properly before the Court, the memorandum of agreement did not constitute a repudiation of the CBA by defendant; and (3) if defendant repudiated the grievance procedures of the CBA by entering into the memorandum of agreement, then so did the union when, as plaintiff's representative, it accepted and endorsed the memorandum of agreement. In the alternative, defendant requests that the case be certified for interlocutory review.

## II. Standard of Review

"While the Federal Rules do not provide for a motion to reconsider, a district court has the inherent power to reconsider its interlocutory orders . . . ." *Fernández-Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008). "When faced with a motion for reconsideration, a district court must balance the need for finality against the duty to render just decisions." *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000). "[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009).

Here, defendant seeks reconsideration of a motion to dismiss based on a manifest error of law. On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness*

7

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

### III. Analysis

Defendant contends that the Court should not have considered the issue of repudiation. Typically, such a situation arises when a defendant alleges that a plaintiff has failed to exhaust contractual grievance procedures. Here, defendant contends that there was no such allegation. In *Ramirez-Lebron*, the First Circuit explained that repudiation of grievance procedures can be considered when the employer moves to dismiss based on the failure to exhaust contractual remedies. 593 F.3d at 133 ("[I]f the employer denies the existence or the scope of its alleged repudiation in a Section 301 suit and moves for dismissal of the action based on the failure to exhaust contractual remedies, the issue raised is for the court after appropriate inquiry into the circumstances."); *see also Vaca v. Sipes*, 386 U.S. 171, 185 (1967) ("An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by

the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures. In such a situation (and there may of course be others), the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." (citations omitted)).

Unlike in *Ramirez-Lebron*, neither party in this case alleged that plaintiff failed to exhaust his administrative remedies, and plaintiff did not raise the issue of repudiation. The parties in this case went through the formal grievance procedures as outlined in the CBA, and plaintiff was represented by the union during the process. The result of the process was the memorandum of agreement that purported to be "a full and final resolution of the [u]nion's grievance for [plaintiff]." (Compl. Ex. 5). Plaintiff therefore exhausted his administrative remedies. Upon reconsideration, it would therefore appear that the issue of repudiation was not properly before the Court.

Defendant further contends that even if the issue of repudiation were properly before the Court, the memorandum of agreement was not an act of repudiation. As noted, the Court cited *Ramirez-Lebron* in support of its conclusion that a repudiation occurred. That case involved a "sham secret agreement" entered into by the employer and a small faction of employees, and the court found that the "union ha[d] *not* wrongfully refused to process the employee's grievance." 593 F.3d at 132-34. Here, there was no such secret agreement; defendant and plaintiff, with the union as his authorized representative, consented to the terms of the memorandum of agreement. The memorandum of agreement was the culmination of the grievance procedure, and the complaint does not allege facts sufficient to support a finding of deceit or bad faith on the part of defendant in negotiating or agreeing to the memorandum.

9

Defendant also contends that the memorandum of agreement was a "last-chance agreement" that is an acceptable method of settling grievances. The First Circuit has permitted last-chance agreements as a valid method to resolve grievances, and the court has not considered such agreements to be a form of repudiation. *See Bailey v. Georgia-Pac Corp.*, 306 F.3d 1162, 1165 n.2 (1st Cir. 2002); *Locke v. U.S. Airways,* Inc., 764 F.3d 73 (1st Cir. 2014); *see also Connolly*, 2001 WL 575868, at *4. Furthermore, as defendant points out, "[e]ach of the other circuit courts of appeal recognize and enforce last chance agreements as a valid method of resolving grievances," and "not one of these circuits has held that an employer's use of a [l]ast [c]hance [a]greement constitutes repudiation of the grievance procedures in the CBA." (Def.'s Mem. Support Mot. Reconsider at 6-8).[1]

Defendant further contends that if the memorandum of agreement constituted a repudiation, the union would be equally culpable for waiving the grievance procedures without providing for an alternative. If the union also repudiated the grievance procedures without providing for a manner to resolve disputes, plaintiff could only bring a hybrid claim under section 301. Upon reconsideration, the Court agrees with that contention. To prevail on a hybrid claim, "the plaintiff 'must prove *both* that the employer broke the [CBA] and that the union breached its duty of fair representation, in order to recover against either [entity].'" *Balser*

---

[1] *See Taddeo v. County of Niagara*, 413 Fed. App'x 397, 398 (2d Cir. 2011); *United Steelworkers of America, AFL-CIO-CLC v. Lukens Steel Co.*, 969 F.2d 1468, 1470 (3d Cir. 1992); *Merck & Co. v. International Chem. Workers Union Council of United Food and Commercial Workers Union, Local 94C*, 335 Fed. App'x 300, 304 (4th Cir. 2009); *International Union of Operating Eng'rs, Local 351 v. Cooper Natural Resources, Inc.*, 163 F.3d 916, 919 (5th Cir. 1999); *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1184 (6th Cir. 1997); *Tootsie Roll Indus., Inc. v. Local Union No. 1 Bakery, Confectionary & Tobacco Workers' Int'l Union*, 832 F.2d 81, 84 (7th Cir. 1987); *Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1440 (8th Cir. 1992); *Fuller v. Frank*, 916 F.2d 558, 562 (9th Cir. 1990); *Brown v. Runyon*, 72 F.3d 137, 1995 WL 736258 (10th Cir. 1995); *Roberts v. Rayonier, Inc.*, 135 Fed. App'x 351, 356-57 (11th Cir. 2005); *McCall v. U.S. Postal Serv.*, 839 F.2d 664, 667 (Fed. Cir. 1988); *U.S. Dep't of Air Force v. Federal Labor Relations Auth.*, 949 F.2d 475, 478 (D.C. Cir. 1991).

*v. International Union of Elec., Elec., Salaried, Mach. & Furniture Workers (IUE) Local 201*, 661 F.3d 109, 118 (1st Cir. 2011) (alterations in original) (quoting *Chaparro-Febus v. International Longshoreman Ass'n, Local 1575*, 983 F.2d 325, 330 (1st Cir. 1992)). It is well-established that courts determining hybrid claims under § 301 of the LMRA should import the six-month limitations period from § 10(b) of the National Labor Relations Act, 25 U.S.C. § 151 *et seq*. *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 169-70 (1983); *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). Therefore, even if plaintiff's § 301 claim were construed as a hybrid claim, the six-month limitations period would have run.

Because the Court erroneously considered the issue of repudiation and concluded that the memorandum of agreement constituted such a repudiation, the motion for reconsideration will be granted. Plaintiff was required to bring a "hybrid" claim instead of a straight breach-of-contract claim under § 301 of the LMRA. However, plaintiff's complaint did not allege wrongdoing by the union, and, in any event, the six-month limitations period for a "hybrid" claim has expired. Accordingly, Count 2 will be dismissed.

### IV. Conclusion

For the foregoing reasons, defendant's motion for reconsideration is GRANTED and plaintiff's LMRA § 301 claim (Count 2) is DISMISSED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: April 30, 2015   United States District Judge