UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAUL DEGRANDIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 14-10416-FDS |
| CHILDREN'S HOSPITAL BOSTON, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON PLAINTIFF'S MOTION TO QUASH DEFENDANT'S SUBPOENA
TO UNION TO PRODUCE DOCUMENTS (#50)

KELLEY, U.S.M.J.

   I.  Background

   Paul DeGrandis worked as a carpenter at Children's Hospital in Boston from September 2003 until he was fired in 2008.  (#1 at 1, 6.)  He was fired ten weeks before his pension was to vest, allegedly because of a misunderstanding about a shelf he was supposed to have fixed.  *Id*. at 6.  He was a member of the International Union of Operating Engineers, Local 877, AFL-CIO that entered into a Collective Bargaining Agreement ("CBA") with the Hospital.  *Id.* at 2.  The CBA required that the Hospital have "just cause" for firing employees.  (#1-2 at 6.[1])  The CAB also provided for a grievance procedure to be followed when an employee was disciplined or fired.  If a grievance was settled according to the rules of the CAB, it was "considered closed" and would not "thereafter be subject to the grievance procedure or to arbitration."  If a grievance was not settled through the grievance procedure, it was to be arbitrated and the award of the

---

[1] The Plaintiff only attached an excerpt of the CAB to his complaint.  The rest of the details concerning the CAB are taken from the decision of the First Circuit.

arbitrator was final and binding on the parties. *DeGrandis v. Children's Hospital Boston*, 806 F.3d 13, 15 (1st Cir. 2015).

DeGrandis filed this lawsuit on February 25, 2014, just a few days before the six-year statute of limitations ran, alleging that the Hospital wrongly terminated his employment. He raised three claims: breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of the CBA under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The district court dismissed all three claims (#33); Plaintiff appealed the dismissal of the claim under the LMRA.[2] The First Circuit reversed the district court's order dismissing the claim and remanded the case. *DeGrandis*, *supra*.

As the Appeals Court explained in its decision, in 2007, DeGrandis was injured on the job a number of times, which apparently set in motion problems that resulted in the Hospital's proposing that he be terminated. *DeGrandis,* 806 F.3d at 15. He filed a grievance in response, and represented by the union, entered into a Memorandum of Agreement ("MOA") with the Hospital and the union. *Id.* The MOA contained "a waiver of the typical rule that before proceeding to federal court a plaintiff must exhaust [the] CBA's grievance and arbitration procedures and abide by its finality provisions." *Id*. at 14. Specifically, the MOA stated that "any further failure to comply with the Employer's generally applicable work standards during the 12 month period following the date of this agreement shall be grounds for immediate termination, and termination on that basis shall not be subject to the grievance and arbitration provision of the parties' collective bargaining agreement." *Id*. at 15. When, several months later, he was fired pursuant to the MOA, the Hospital stated that DeGrandis had failed "to meet

---

[2] The other two claims were properly dismissed because they were state law claims that were entirely preempted by the LMRA. *DeGrandis,* 806 F.3d at 16 n. 2.

job performance standards"; DeGrandis claims that he was fired because his supervisor, who did not like him, lied to his superiors about DeGrandis's job performance. (#1 at 6.)

The Hospital argued to the First Circuit that by entering into the MOA, DeGrandis had bargained away his right to sue in federal court if he were terminated pursuant to the agreement. The First Circuit disagreed, pointing out that the MOA here, also known as a "last chance agreement," could have stated, as many similar agreements do, that in the event of the employee's termination under the agreement, the employee could still challenge the facts upon which the employer determined that the employee was non-compliant. *DeGrandis*, 806 F.3d at 17 n. 4.  Since the agreement did not provide for any review at all, however, "under the plain language of the MOA, DeGrandis and the Hospital waived the CBA's grievance and arbitration procedures for precisely the type of grievance at issue in this case." *Id*. at 17.  Thus, the MOA did not limit DeGrandis's right to bring his case to federal court:

> Since DeGrandis could not under the MOA take advantage of the CBA's grievance and arbitration procedures, for us to find that he cannot challenge his termination in federal court would amount to giving the Hospital an unreviewable right to fire DeGrandis for any reason so long as it claimed that it was firing him for failure to abide by its work requirements.  The MOA gives the Hospital no such right.

*Id.* at 18.

II.  The Motion to Quash

After the case was remanded to the district court, the Hospital served a subpoena on the union, demanding "All documents concerning or relating to Mr. DeGrandis." (#51-1.)  Plaintiff moved to quash the subpoena, arguing that the court should adopt a "labor relations privilege" whereby communications between union representatives and members are privileged. (##50, 51.)  The Hospital opposed the motion to quash (#54) and DeGrandis replied. (#57.)

The court held a hearing on the motion on July 8, 2016.  The court informed the parties that while it had not finally decided the issue, it was not inclined to recognize a federal labor relations privilege, and ordered counsel for Plaintiff to contact the union to determine what the records consisted of, and if any of them were privileged for a reason other than the labor relations privilege proposed by Plaintiff.

Plaintiff filed a reply to the Hospital's opposition on July 15, 2016 (#57), arguing again for the labor relations privilege, and attaching an affidavit signed by Plaintiff's counsel.  The affidavit stated that Thomas Landry, counsel to the union, reported that the union's "file consisted of documents pertaining to Mr. DeGrandis' membership in the Union, as well as materials related to discipline from Hospital" and "that his law firm has performed work on behalf of DeGrandis, and attorney-created materials are included within the Union's file."  (#57-2.)  Therefore, DeGrandis argued, "work product and attorney/client privilege also prohibit the disclosure of some of the Union file materials and further support the plaintiff's motion to quash." (#57 at 6.)   The Hospital filed a sur-reply on August 5, 2016. (#60.)

For the reasons stated below, Plaintiff's motion to quash is DENIED, as this court does not find that there is a federal labor relations privilege.  As set out at the end of this Order, Plaintiff is given two weeks to file any further objections to the subpoena.

III.  The Law

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, proportional to the needs of the case. Since he is claiming a privilege, DeGrandis has the burden of proof as to its existence and applicability.  *FDIC v. Ogden Corp*., 202 F.3d 454, 460 (1st Cir. 2000).  This is a federal question case, therefore federal common law controls with regard to evidentiary

privileges. *See* Fed. R. Evid. 501 (privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."). The Supreme Court has cautioned that federal courts should not use the power to recognize new privileges expansively. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 192 (1990). While federal courts will consider whether states have recognized a privilege when deciding whether to adopt one, *see Jaffee v. Redmond*, 518 U.S. 1, 12-13 (1996), state courts' recognition of a privilege is only one factor to be considered. Of particular importance is whether Congress "has considered the relevant competing concerns but has not provided the privilege itself." *University of Pennsylvania*, 493 U.S. at 189.

The First Circuit has directed that a court considering a new privilege should first determine whether Massachusetts state law would recognize the privilege. Next, the court should consider four factors: 1) whether the communications originate in a confidence that they will not be disclosed; 2) whether the element of confidentiality is essential to the full and satisfactory maintenance of the relations between the parties; 3) whether the relationship is one which ought to be sedulously fostered; and 4) whether the injury that would result to the relation by the disclosure of the communications would be greater than the benefit gained for the correct disposal of litigation. *In re Hampers,* 651 F.2d 19, 23-24 (1st Cir. 1981).

IV. Analysis

A threshold question is whether the materials sought are relevant, although the Plaintiff has not raised this issue. The Plaintiff appears to have focused almost entirely on advocating for the proposed labor relations privilege. In the interest of shortening further litigation on this matter, the court will offer an opinion on the issue of relevancy, while leaving it to the Plaintiff to raise any objection on this ground.

The Hospital argues that it requires the records because whether the union "expressed a view – to DeGrandis or others – as to DeGrandis' alleged breach of the [MOA]" is "critical" to its claim that DeGrandis failed to comply with the Hospital's generally applicable work standards. (#54 at 11.) It is not clear, however, if the union was involved at all in the specific dispute in this case, that is, the matter of DeGrandis's alleged breach of the MOA, as the MOA by its terms precludes DeGrandis from participating in any grievance procedures in the event of a breach. At the very least, this argument concerning why the materials sought are relevant suggests that the subpoena to the union, for "All documents concerning or relating to Mr. DeGrandis," (#51-1), is overbroad.

The Hospital also argues that communications between the union and DeGrandis are relevant because if DeGrandis "blamed the Union for breach of the duty of fair representation during the grievance proceedings leading to the Memorandum of Agreement or thereafter, he can no longer deny that this is a hybrid claim for which the statute of limitations has now run." (#54 at 11.) This argument is problematic for several reasons. First, even if the union could be said to have failed in its duty of fair representation in putting the MOA in place, as mentioned above, the union had nothing to do with the termination of DeGrandis pursuant to the MOA, which prevented DeGrandis from engaging in any grievance procedures. DeGrandis is suing the Hospital because he claims that his supervisor lied about his not performing his duties after the MOA was put into place. The union had nothing to do with that.

The second problem with the Hospital's argument is more complicated. As the First Circuit acknowledged, one of the themes running through the case has to do with the statute of limitations for DeGrandis's claims. *DeGrandis*, 806 F.3d at 16. Here, DeGrandis's breach of contract claim under section 301 of the FLMA against the Hospital for violating the CBA has a

six-year statute of limitations. As noted above, he filed his suit just days before the six years ran. If DeGrandis had brought a so-called "hybrid claim," asserting claims against the union for breaching its duty of fair representation and also against the employer for breaching the CBA, the statute of limitations would have been six months, and DeGrandis' suit would be time-barred. *See DeGrandis*, 806 F.3d at 16 (citing *Balser v. Int'l Union of Elec., Elec, Salaried, Mach. & Furniture Workers (IUE) Local 201*, 661 F.3d 109, 118 (1st Cir. 2011)).

Obviously, the Hospital would like to argue that DeGrandis must bring a "hybrid claim," and sue both the union and the Hospital, so that the suit is time-barred. But that argument is not available to the Hospital. "Hybrid claims" arise when an employee is required to exhaust any grievance or arbitration remedies provided in a CBA and is then bound by the finality of that agreement. *DelCostello v. International Brotherhood of Teamsters, et al.*, 462 U.S. 154, 163-64 (1983). The Supreme Court has recognized that "this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary or perfunctory fashion as to breach its duty of fair representation," therefore, in such a case the employee is not bound by the finality provisions in a CBA and may bring suit against both the union and the employer. *Id*. at 164 (citing *Vaca v. Snipes*, 386 U.S. 171 (1967) and *Hines v. Anchor Motor Freight*, 424 U.S. 554 (1976)) (other citations omitted).

Here, however, as the First Circuit found, the MOA was drafted in such a way that there *were no grievance or arbitration procedures provided for at all*, so that rather than having "very limited judicial review," *DelCostello*, 462 U.S. at 164, DeGrandis retained the right to sue in federal court without limitation. *DeGrandis*, 806 at 18 ("DeGrandis's only option for obtaining review [after being terminated pursuant to the MOA] was to bring a claim in federal court. And

that is precisely what he did when he brought this straightforward breach of contract claim under section 301 of the LMRA.")  Because his rights of judicial review are intact, DeGrandis is not compelled to complain that the union breached its fair duty of representation in order to proceed in federal court.  In fact, if it is true, as the Hospital says, that the union, "not the Hospital, proposed the language in the Memorandum of Agreement," (#54 at 11), the union did an excellent job for DeGrandis, as the MOA provides him with more rights of redress than the CBA would have.

At any rate, even if the Hospital could discover materials in the union's file that show that DeGrandis thought that the union was somehow "to blame" for his termination, (*see* #54 at 11), the Hospital is wrong in concluding that DeGrandis would then be under an obligation to sue the union.  DeGrandis can sue whomever he pleases.  *DelCostello*, 462 U.S. at 165 (in "hybrid suit," the "employee may, if he chooses, sue one defendant and not the other").

The Hospital questions whether Plaintiff has standing to object to the subpoena, since the union seemingly (and in the court's view, surprisingly), does not object to producing the materials sought by the Hospital.  (#60 at 2.)  As a general rule, a party lacks standing to quash a subpoena issued to a nonparty unless the information sought is privileged or implicates the party's privacy interests.  *See Patrick Collins, Inc., v. Does 1-38*, 941 F. Supp.2d 153, 159 (D. Mass. 2013).  The personal right or privilege claimed need not be weighty:  parties need only have "*some* personal right or privilege in the information sought" to have standing to challenge a subpoena to a third party.  *Id*.  (emphasis in original) (citations omitted.)  In his reply to the Hospital's opposition, DeGrandis asserts that some of the materials are protected by the attorney/client privilege and that others pertain to his "discipline" by the Hospital.  At least some of his problems at work appear to have been prompted by medical issues.  (#57 at 6.)  The court

therefore finds that the materials may be privileged and also may implicate DeGrandis's privacy rights, and thus, he has standing to challenge the subpoena.

There remains the question whether the court will recognize the "labor relations privilege" which DeGrandis proposes should protect "confidential communications and materials between the Union and DeGrandis." (#51 at 2.)   DeGrandis relies on *Cook Paint and Varnish Co.*, 258 N.L.R.B. 1230 (1981), several state court cases, and three law review articles to argue that "there has been widespread recognition of a labor relations privilege." (#51 at 3.) Specifically, he argues that *Cook Paint* stands for the proposition that section 8 of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), "establishes that it is an unfair labor practice for an employer to compel the union's disclosure of confidential information received from a member during the course of representing that member," not only during grievances and arbitration, but also "during the course of [a] lawsuit." (#57 at 1, 3.)

In *Cook Paint*, an employer tried to question a union shop steward and ordered him to produce any notes he had taken about conversations he had had with an injured employee prior to a labor arbitration about a disputed incident.  The steward was threatened with discipline if he did not comply.  The National Labor Relations Board ("NLRB") found that the coersive questioning of the steward was an unfair labor practice.  258 N.L.R.B. at 1231.  The Board cautioned, however, that "we wish to emphasize that our ruling in this case does not mean that all discussion between employees and stewards are confidential and protected by the Act.  Nor does our decision hold that stewards are, in all instances, insulated from employer interrogation. We simply find herein that because of [the steward's] representational status, the scope of [the employer's] questioning, and the impingement on protected union activities, [the employer's] April 21, 1978, interview of [the steward] violated Section 8(a)(1) of the Act." *Id*. at 1232.

*Cook Paint* is an administrative decision of the NLRB and is not binding on this court. It cannot be cited as authority for creating a new federal labor relations privilege. Even if the case had some precedential value, it is a narrow decision which explicitly states that its holding is confined to the facts of that case, where an employer was attempting to coerce communications from a union steward under threat of discipline. That is not the situation here.

While *Cook Paint* is of limited value, whether state courts have recognized the proposed labor relations privilege, especially whether Massachusetts has, is relevant to the question whether federal courts should recognize it. *See In re Administrative Subpoena*, 400 F. Supp. 2d 386, 390 (D. Mass. 2005) (in rejecting federal medical peer review privilege, court considers whether forum state recognizes privilege) (citing *Jaffee v. Redmond*, 518 U.S. at 12-13.) Plaintiff points to state law decisions in New York and Alaska where courts recognized labor relations privileges based on state statutes that are similar to the National Labor Relations Act. *See Seelig v. Shepard*, 578 N.Y.S. 2d 965 (N.Y. App. Div. 1991); *City of Newburgh v. Newman*, 421 N.Y.S.2d 673 (N.Y. App. Div. 1979); *Peterson v. State of Alaska*, 280 P.3d 559 (Alaska 2012). (#51 at 9-10, 11-13.) Pending before the Massachusetts Supreme Judicial Court now is the case of *Chadwick v. Duxbury Public Schools*, SJC Docket No. 12054 (2016), where the SJC will rule on whether Massachusetts will recognize a union-member privilege. (*See* #57-1 at 2, case docket, where SJC announces it is soliciting amicus briefs on whether "Massachusetts will recognize a union-member testimonial privilege, such that the plaintiff in this case, in her underlying employment discrimination action against her employer, would not be required to produce in discovery communications between herself and her union representatives related to the case.")

The court balances the above information concerning state courts' rulings – two states have recognized the proposed privilege, and Massachusetts is considering whether to recognize it - with the fact that Congress has never acted to establish a labor relations privilege, and no federal court has ever recognized it. In fact, several federal courts have expressly rejected such a privilege.[3] *See*, e.g., *International Brotherhood of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, 2012 WL 1801979 (D. Colo. May 16, 2012) (rejecting "internal union" or "labor relations" privilege); *Dang v. Sutter's Place, Inc.*, 2012 WL 2906109, at *3 (N.D. Cal. Jul. 13, 2012) (communications between union and plaintiff, who had been represented by the union in a grievance, were not privileged); *Parra v. Bashas' Inc.*, 2003 WL 25781409 *4-5 (D. Ariz. Oct. 2, 2003) (no privilege for union-employee communications); *McCoy v. Southwest Airlines Company, Inc.*, 211 F.R.D. 381 (C.D. Cal. 2002) (court refused to extend the attorney-client privilege to protect discussions between airline pilots and union representatives concerning grievance hearings).

Examining the factors set out in *In re Hampers,* 651 F.2d 23-24 concerning whether new privileges should be recognized is difficult here because the court has so little information about the materials sought by the Hospital. The court does not know, for example, whether communications that would be covered by the privilege, if they are even in the file, were made with any kind of assurance or understanding that they would be in confidence. In any event it is not necessary to go through the factors because it is apparent that DeGrandis has not met his burden to establish that the privilege should be adopted by this court.

---

[3] There are cases in which unions, faced with discovery requests concerning union activities, successfully claim they are protected by a First Amendment associational privilege. *See*, e.g. *Dole v. Service Employees Int'l Union*, 950 F.2d 1456 (9th Cir. 1991); *Patterson v. Heartland Industrial Partners, LLP*, 225 F.R.D. 204, 206 (N.D. Ohio 2004), citing *Int'l Union v. Garner*, 102 F.R.D. 108, 114 (M.D. Tenn. 1984). Plaintiff has raised no First Amendment issue here and the court does not consider it.

DeGrandis asserted in his last filing that some of the materials are covered by the attorney/client privilege.  Fed. R. Civ. P. 26(b)(5)(A)(ii) requires a party claiming privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011).  "The universally accepted means" of claiming documents are privileged is the production of a privilege log.  *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001).  DeGrandis has not produced anything other than "a blanket assertion of privilege," which is insufficient.  *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d at 71.

DeGrandis has two weeks from the date of this Order to file any further objections to the subpoena, including any objections relating to attorney/client privilege, whether the subpoena is overbroad, and whether the information sought is relevant under Fed. R. Civ. P.  26(b).


August 25, 2016.                                             /s/ M. Page Kelley
                                                             M. Page Kelley
                                                             United States Magistrate Judge